Filed 8/30/21  P. v. Towner CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEREMY MICHAEL TOWNER,<br><br>    Defendant and Appellant. | H048667<br>(Santa Cruz County<br>Super. Ct. No. S908162) |

In 2001, defendant Jeremy Michael Towner pleaded no contest to second degree murder (Pen. Code, § 187)[1] and robbery (§ 211), and admitted that he had personally used a deadly weapon (§ 12022, subd. (b)(1)) during the robbery.  The trial court sentenced defendant to a prison term of 15 years to life for the murder, consecutive to the upper term of six years for the robbery, and stayed the term for the personal use enhancement.  Defendant appealed, raising sentencing claims, and this court affirmed. (*People v. Towner* (Jan. 10, 2003, H023638) [nonpub. opn.].)

In April 2020, defendant filed a petition for resentencing pursuant to section 1170.95.  In July 2020, the superior court issued an order to show cause and ordered an evidentiary hearing.  In December 2020, the prosecution moved for reconsideration.  The superior court thereafter granted reconsideration and vacated the order to show cause.  It entered a new order denying the section 1170.95 petition based on its finding that defendant had failed to state a prima facie case for relief.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant appeals, arguing that the superior court erred and that he stated a prima facie case, entitling him to issuance of an order to show cause and an evidentiary hearing. The Attorney General concedes that defendant made a prima facie showing of eligibility. We agree with the parties and reverse the order denying the section 1170.95 petition.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     *Offense and Direct Appeal*

In November 1998, defendant and his friend, Micah Joe Russell, met the victim and the victim's girlfriend, Anna, in Santa Cruz. Defendant and Russell asked for a ride to a house in the Santa Cruz Mountains. They offered to let the victim and Anna stay at the house. On the drive, the victim mentioned that he had a gun, "which he wished to sell for $25.00 or trade for heroin."

Kimberley LaBore and James Dotson were at the house when the group arrived. Russell went to sleep in one of the bedrooms. LaBore woke him up at some point and asked if he would "watch her back," explaining that things "might get messy." Russell went back to sleep but was awakened by Anna, who said she thought that the victim was getting beaten. Russell heard sounds of people wrestling in the other bedroom. He called out, asking if things were okay. Defendant came out and assured Russell that everything was okay. Defendant said that LaBore and Dotson were wrestling.

In the morning, the victim was gone. Dotson said that the victim had walked into town to try to buy heroin. Defendant later told Russell, "We killed him." Defendant said that he and Dotson had beaten the victim with a bat and a club. Defendant said that

---

[2] The factual background of the crime is taken from our prior opinion in this case. As explained in greater detail below, defendant disputes key portions of this factual recitation, which he asserts were "circuitously taken from the probation report, which were in turn taken, in part, from the prosecutor's sentencing memorandum." In turn, "[t]he prosecutor's facts were (presumably) drawn from the grand jury testimony and police reports, one-sided presentations intended to establish probable cause to arrest and charge." Our prior opinion acknowledged that the facts were taken from the probation report, and we repeat them here with the same acknowledgment.

LaBore had cut the victim's throat. "The reason for the murder was to get [the victim's] gun." Defendant said that he, Dotson, and LaBore dragged the victim's body outside while he made gurgling sounds. Defendant then dropped a large cinder block on the victim's head, crushing it, while saying, "good night."

The victim's body was recovered near a roadside six to eight weeks later. His skull was smashed into multiple pieces and crushed into a triangular shape consistent with a cinder block. Although the body was decomposed, his clothing indicated that he had been stabbed in the neck.

Defendant was later arrested. He confessed and provided further details of the offenses. Defendant said that Dotson wanted the victim's gun and planned to beat him or kill him. Defendant was sent to bring the victim to the bedroom where Dotson and LaBore were waiting. In the bedroom, the victim pulled out his gun. Dotson began to strike the victim with a bat. The victim fell down, still holding the gun. Defendant then put a knife to the victim's throat and ordered him to drop the gun. The victim begged for help. Dotson and LaBore then cut his throat. Defendant told the police that Dotson dropped the cinder block on the victim's head.

Defendant was charged, by grand jury indictment, with murder and robbery, with the special circumstance allegation that the murder was committed during a robbery (§ 190.2, subd. (a)(17)(A)) and the allegation that defendant personally used a deadly weapon during both crimes.[3]

Defendant initially pleaded not guilty and denied the special circumstance and deadly weapon allegations. He subsequently changed his plea. He pleaded no contest to second degree murder and robbery, and admitted that he had personally used a deadly

---

[3] After the indictment was filed, the trial court found that defendant had been under the age of 18 on the date of the offense. Therefore, it suspended the criminal proceedings and certified the matter to juvenile court. After a subsequent fitness hearing (Welf. & Inst. Code, § 707), the juvenile court found defendant should be tried as an adult, and the criminal case reopened.

3

weapon during the robbery. The remaining personal use and special circumstance allegations were stricken.

At sentencing, the trial court imposed the upper term of six years for the robbery with a consecutive term of 15 years to life for the murder. The court stayed the term for the personal use enhancement.

### B.    *Petition for Resentencing*

Defendant filed a petition for resentencing, with the assistance of counsel, in which he averred that after recent changes to the Penal Code, he could no longer be convicted of murder and was eligible for resentencing. Attached to the petition was a declaration that disputed certain statements attributed to him. Among others, he asserted that following the crime he told Russell, " '*They* killed him,' meaning Dotson and LaBore, not 'We killed him,' as Russell claimed." According to defendant, he "did not hit [the victim] during the crime." He also claimed he "did not tell Russell that 'he picked up a large cinder block and dropped it on [the victim's] head.' " "Rather, as [defendant] told police, Dotson dropped the cinder block on [the victim's] head."

Defendant noted some "confusion" over Russell's grand jury testimony. Although Russell testified that the reason for killing the victim was that " '[Dotson] wanted the gun that [the victim] had,' " he also admitted to "not knowing the reason for the killing." "He testified that LaBore said she had clubbed [the victim]."

Defendant also noted the grand jury testimony of Brenton McQueen, who "testified that he ran into Dotson at a café following the murder." "Dotson said that a man staying at the house tried to rape or otherwise harm LaBore." "Dotson told McQueen that he walked in on the assault and attacked the man with a bat," saying " 'I kept hitting him and I could not stop.' " "Dotson told McQueen that [defendant] had seen the man on the floor and got scared, so Dotson deliberately made him an accessory by forcing him to use LaBore's knife to cut the man." "McQueen testified that Dotson showed him a gun and said he took it and some drugs from the [victim]."

4

The petition also noted that "[i]n a letter written by Dotson to LaBore found in Dotson's jail cell, Dotson admitted killing [the victim] in LaBore's presence. The letter did not mention [defendant] at all."

Defendant "dispute[d] other alleged facts." "[Defendant] told officers he did not know that Dotson intended to kill [the victim]," but rather believed he only intended "to take his gun by force." Defendant disputed that he ever held a knife to the victim's throat or ordered him to drop the gun. Finally he alleged that "[a]fter Dotson and LaBore had beaten and stabbed [the victim], Dotson threatened [defendant] and told him he had to participate in the crime. [Defendant] feared for his life, so he took the knife and pretended to cut or superficially cut [the victim's] throat."

Defendant noted that "[a] forensic pathologist testified to the grand jury that the cause of [the victim's] death was head trauma; his skull was crushed." It also "appeared that a narrow bar was used to hit the side of his head . . . ." While the victim's collar showed evidence of cuts, "due to the state of decomposition of [the] body, no determination could be made as to whether he had been stabbed."

Defendant submitted as an exhibit LaBore's "commutation application to the Governor (which was granted)," in which she described aspects of the crime. She described going to sleep and waking up to someone touching her stomach. She saw that it was the victim and " 'began kicking at him.' " The victim " 'stumbled out of the bed, and Dotson was at the bedroom door. Dotson picked up a bat that was at the front door and began beating [the victim] with it.' " Dotson gave LaBore the bat and she stuck the victim. She handed the bat back to Dotson who continued to beat the victim with the bat. LaBore picked up a blade and " 'cut [the victim's] neck.' " LaBore believed the victim was dead. She then noticed defendant at the door. Dotson handed a knife to him and "told him he was either with us or he could join [the victim. Defendant] took the knife and made a few cuts on [the victim's] body." Defendant asserted that "LaBore offered a similar version of the facts" at her 2019 parole hearing.

5

Based on the factual record, defendant asserted that he could no longer be convicted of felony murder. Specifically, he asserted that he was not a major participant, and that he did not act with reckless indifference to human life.

## C.    *Superior Court's Ruling*

The superior court held an initial hearing on the petition in July 2020, at which defendant was represented by counsel. The court noted defendant's statements, which tended to show he was not the actual killer or a major participant acting with reckless indifference. The court also noted that there was record evidence tending to show the opposite, which meant "there are some conflicts in this evidence in terms of what we have." The court observed that because the case resolved with a plea, "we don't have a full type of record." However, the court concluded that "at this point . . . I can't say that as a matter of law [that] this record meets the allegations of the petition." Therefore, the court issued an order to show cause, scheduled briefing, and set a tentative hearing date.

At a subsequent hearing in November 2020, the superior court indicated that it believed it had not "issued any sort of [order to show cause] regarding an evidentiary hearing." After the parties stated that the court had issued an order to show cause, the court elaborated that it had "been doing some research regarding the issue . . . . And I do have some strong concerns based on cases that have come out more recently regarding pleas where the record comes from a plea rather than a jury trial." The court continued: "[T]he way I see what's being presented to me is the Defense claiming that he's essentially guilty of nothing that he was under duress at all. And I don't think that's what the statute was made to do"—it "was not to completely exonerate him." Based on the court's statements, the prosecution indicated it would file a motion for reconsideration.

At the next hearing in December 2020, the superior court considered the petition for resentencing in light of the prosecution's motion for reconsideration. According to the court, the operative question was "whether [defendant] could have been convicted of murder in light of changes to the felony murder rule." In other words, "if there was

6

evidence that he was a participant in this robbery, but not a major participant who acted with reckless indifference to human life and was not the actual killer, this would be an appropriate case for considering resentencing." The court noted that the prosecution maintained that defendant was the actual killer, whereas defendant "has . . . said . . . he not only [was] not the actual killer but anything he did he essentially did under duress." The court indicated it had some difficulty in concluding that there is "some theory . . . or some factual basis for [defendant] to say that he participated in the robbery but wasn't a major participant who acted with reckless disregard for human life. When he's claiming he basically did everything under duress."

Defendant emphasized that there was contested evidence as to the level of defendant's participation, and the superior court at this stage "should not be in [the] position of . . . reweighing that type of evidence." Defendant argued that the "duress [was] speak[ing] directly to his subjective intent, which is clearly part of the . . . analysis as to whether he acted with reckless indifference to human life."

The court indicated that, in its view, defendant's claims were "something that should have been brought up in a habeas petition. And he never should have pled because he's not guilty at all of anything . . . [because] he didn't do anything other than acting under duress the entire time." In sum, the court concluded that it was defendant's burden "to show that [he] could not still be convicted of murder under these theories," and that is not "the same thing as saying that he shouldn't have been convicted of murder at all." Thus, the court granted the motion for reconsideration, vacated its order to show cause, determined "that no prima facie case has been made in this matter sufficient to issue an [order to show cause]," and denied the petition.

Defendant timely appealed from the order denying his petition for resentencing.

II. **DISCUSSION**

Defendant contends that the superior court erred in denying his petition without issuing an order to show cause and holding an evidentiary hearing. The Attorney General

7

agrees that petitioner established a prima facie case for relief, and therefore the matter should be remanded to the superior court.

### A. *Legal Background*

"Effective January 1, 2019, the Legislature passed [Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, § 4)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) "In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*Ibid*.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)-(3); see also § 1170.95[,] subd. (b)(1)(A).) Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.) "Where the petition complies with subdivision (b)'s three requirements, then the court

8

proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief.  (§ 1170.95, subd. (c).)"  (*Id*. at p. 960.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.'  (§ 1170.95, subd. (d)(1).)  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'  (§ 1170.95, subd. (d)(3).)  At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  (§ 1170.95, subd. (d)(3).)"  (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

### B.      *Prima Facie Showing*

In determining whether the petition has made a prima facie showing, after counsel has been appointed, the trial court may examine the record of conviction "to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition,"

9

then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.)

Our high court has emphasized that "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  Thus, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Ibid.*)

### C.    Section 1170.95 Petition

The parties agree that under the applicable standard, defendant established a prima facie showing he is entitled to relief such that the court was required to issue an order to show cause.  (§ 1170.95, subd. (c).)  We also agree.  As required, defendant's petition alleged that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; that he accepted a plea offer in lieu of a trial at which he could be convicted for first or second degree murder; and that he could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.  (§ 1170.95, subd. (a).)  In his declaration, defendant denied that he was a major participant in the subject offenses and denied that he acted with reckless indifference to human life, both of which must now be found to be convicted of felony murder.  We must assume the truth of these allegations.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

In the face of defendant's allegations, our review of the record does not rebut defendant's allegations as a matter of law.  We recognize that there are facts in the record that vary significantly from defendant's allegations, indeed, some that suggest defendant was the actual killer or a major participant.  However, other grand jury testimony suggests defendant had a more diminished role, and defendant denied in his confession to police that he was the actual killer.  Notwithstanding the contested evidence, at the prima

10

facie stage "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]"[4] (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

Accordingly, we reverse the superior court's order determining that defendant failed to establish a prima facie case of entitlement to relief under section 1170.95. We remand the matter for the issuance of an order to show cause and a hearing on defendant's section 1170.95 petition. (§ 1170.95, subds. (c), (d).) We express no opinion regarding defendant's entitlement to relief following the hearing.

## III.   DISPOSITION

The superior court's order denying defendant's section 1170.95 petition is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (§ 1170.95, subd. (c)) and hold a hearing on the petition (§ 1170.95, subd. (d)).

---

[4] In its motion for reconsideration before the superior court, the prosecution relied on *People v. Garcia* (2020) 57 Cal.App.5th 100, review granted February 10, 2021, S265692. In that case, Division Six of the Second District Court of Appeal held that the relevant standard for assessing whether a petitioner has made a prima facie showing under section 1170.95 required the superior court to weigh the evidence: "[W]here, as here, the record of conviction contains substantial evidence based on which a reasonable trier of fact could find the petitioner guilty of murder beyond a reasonable doubt under current law despite the changes made by Senate Bill 1437, the petitioner has failed to carry his burden of making a prima facie showing that he could not presently be convicted of murder because of changes made by Senate Bill 1437." (*Garcia*, *supra*, at p. 106.) The Santa Cruz County District Attorney's Office, as amicus curiae, takes the same position at this court. In our view, this standard is incompatible with the California Supreme Court's more recent statements in *Lewis*, and therefore we decline to follow *Garcia*. (See also *People v. Lopez* (2020) 56 Cal.App.5th 936, 951, review granted February 10, 2021, S265974 [concluding that the substantial evidence standard is not the standard for assessing a petitioner's eligibility for relief under section 1170.95, subd. (a)(3)].)

11

_____

ELIA, J.

WE CONCUR:


_____

GREENWOOD, P.J.



_____

DANNER, J.




*People v. Towner*
H048667